IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DEBORAH D. WARD                                                                               PLAINTIFF

v.                              CASE NO.         2:11-CV-02033

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

It appears that the Plaintiff initially filed for DIB and SSI on March 17, 2005 claiming an onset date of August 1, 2004 (T. 44).  A hearing was held on August 23, 2007 (Id.) and the ALJ determined that the Plaintiff did have severe impairments of fibromyalgia, degenerative changes in her lumbar spine, osteoarthritis, pain disorder associated with both psychological factors and a general medical condition, chronic obstructive pulmonary disease, obstructive sleep apnea and hypertension. (T. 46).  On January 14, 2008, after determining the Plaintiff RFC,  the ALJ

determined that the Plaintiff was not disabled. (T. 57).  The Plaintiff did not appeal the ALJ determination.

The plaintiff filed her current application for DIB on April 24, 2008 (T. 115), alleging an onset date of October 15, 2004 (T. 115 & 141), due to plaintiff's fibromyalgia, chronic obstructive pulmonary disease, back pain, depression, restless leg syndrome, and high cholesterol (T. 146).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on May 27, 2009.  Plaintiff was present and represented by counsel.

At the hearing the Plaintiff moved to amend her onset date to January 15, 2008 (T. 17) because that was the date of a prior decision by an ALJ that the Plaintiff was not disabled. At the time of the administrative hearing, plaintiff was 48 years of age and possessed a GED (T. 153). The Plaintiff had past relevant work ("PRW") experience as a line worker  (T. 157 ).

On October 21, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's fibromyalgia, chronic obstructive pulmonary disease, back pain, depression, restless leg syndrome, and high cholesterol did not meet or equal any Appendix 1 listing.  T. 67. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work, except she had an inability to engage in more than occasional overhead reaching T. 67.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining

the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

The ALJ noted that the Plaintiff had sufficient coverage to remain insured through December 31, 2009 and that she had to establish her disability on or before that date. (T. 65). This date is not in dispute. The Plaintiff made an oral motion at the hearing to amend the onset date to January 15, 2008 (T. 17) because the Plaintiff had previously been determined on that date not to be disabled. (T. 57). The Plaintiff must establish that she became disabled between January 15, 2008 and December 31, 2009.

**III.    Discussion**:

**A.  RFC**

After determining that the Plaintiff had severe impairments of fibromyalgia, chronic obstructive pulmonary disease, back pain, depression, restless leg syndrome, and high cholesterol the ALJ determined that the Plaintiff had the residual functional capacity to perform light work except that she could not engage in more than occasional overhead reaching. (T. 67)

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*.  This includes medical records, observations of treating

physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

    **1. Subjective Complaints**

The Plaintiff first contends that the ALJ committed error because the did not properly evaluate the Plaintiff's subjective complaints. (ECF No. 8, p. 11).

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage,

effectiveness and side effects of medication; and 5) functional restrictions. *Casey v Astrue*, 503 F.3d at 695 (8th Cir.2007) (*citing Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (*citing Polaski*, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

      a. Daily Activities

The ALJ stated that the Plaintiff "testified that she is able to mop and dust at home, despite her pain and fatigue she cares for her dogs, crochets, and tries to do other "light housework" at home. She alleged that she has difficulty lifting her arms, which I do find to be credible." (T. 68). This seems to be the only remarks the ALJ made concerning the Plaintiff's activities of daily living.  A claimant's ability to perform household chores does not necessarily prove that claimant capable of full-time employment." *See Ekeland v. Bowen*, 899 F.2d 719, 722 (8th Cir.1990) (*citing Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir.1989)); *Dixon v. Barnhart* 324 F.3d 997, 1002 (C.A.8 (Ark.),2003).  The Plaintiff stated on her Disability Report that she had help with the dog from David Cotner (T. 134), and that while she could do light housework it took between 1-3 hours and that she would rest in between. (T. 135).  While Plaintiff did testify that she sometimes tried to dust or mop, she stated that the activity tired her and that she had to sit down and rest afterwards. (Tr. 20).  Plaintiff also admitted to crocheting, as the ALJ discussed, but stated that she could only do it for about 20 minutes at a time because it caused her arm to swell, and that she had been working on the same afghan for two years. (Tr. 26).

      b.  Duration, Intensity and Frequency of Pain

The Plaintiff stated on her Function Report that her pain "hurt 24 hours a day" (T. 140) and that it kept her awake at night (T. 134).  Plaintiff explained that her pain kept her awake, forcing her to be up and down all night and causing her to be tired during the day and have no energy. (Tr. 22). Plaintiff explained that she was tired and sore 24 hours a day, and that it took her considerably longer, sometimes up to two hours, to complete a task typically requiring only 15 minutes for an average healthy person. (Tr. 18).   The ALJ found that "Even the diagnoses of fibromyalgia contained in the record are based on history alone, with no evidence of trigger point testing." (T. 68).

This conclusion by the ALJ does not seem to be supported by the record.  Plaintiff presented to Redbird Smith Health Clinic on March 6, 2009 complaining of pain, requesting medication other than the Darvocet she had been prescribed because she stated she needed something stronger. (Tr. 266). On April 8, 2009 the Plaintiff was diagnosed with **"multiple tender points fibromyalgia"** by her treating physician,  Dr. Paula McQueen, D.O. with the Hastings Indian Hospital  (T. 352).  Dr. McQueen's assessment was fibromyalgia and she prescribed darvocet. (Id.).  It is clear that Dr. McQueen did perform tender point testing on the Plaintiff and that was how she made her diagnosis.  The body has 18 sites that are possible tender points. For fibromyalgia diagnosis a person must have 11 or more tender points. For a point to be "tender," the patient must feel pain when pressure is put on the site. People who have fibromyalgia may feel pain at other sites, too, but those 18 sites on the body are used for diagnosis. (See www.womenshealth.gov, viewed June 14, 2012).

The opinion of a treating physician is accorded special deference and will be granted

controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).  The court notes the following dialogue in the hearing:

> Atty: Yes, your Honor.  Dr. Ortese (phonetic) at Red Bird Clinic (phonetic) said that she would fill out one of hour medical source statement forms.
> ALJ: Which you know how much I love them.  Could you try to get one of the more mainstream. (T. 11)

It appears that the ALJ discounted the treating physician's diagnosis because of where they were practicing medicine and not based upon medical factors within the file.

      c.  Medications.

On January 15, 2008 the medical records reflect a visit to PCC for insomnia and LBP and Plaintiff was on Darvocet –100 and Restoril (T. 292). On July 3, 2008 the PCC records reflect Plaintiff visited for Depression, Insomnia, right leg pain, LBP and RLS. Plaintiff was on Darvocet and Temazepam [1] (T. 288).  On January 18, 2010 went to the HIH complaining of pain in her back and shoulders and noted that she had been "keeping infant granddaughter and it has caused increased pain from lifting/holding her" (T. 367) and Dr. McQueen prescribed Darvocet [2]100 #60 bid rf x2 (T. 369). [3] On January 25, 2010 the Plaintiff called the HIH and requested

---

[1] Temazepam is in a group of drugs called benzodiazepines (ben-zoe-dye-AZE-eh-peens). It affects chemicals in the brain that may become unbalanced and cause sleep problems (insomnia). Temazepam is used to treat insomnia symptoms, such as trouble falling or staying asleep.

[2] Darvocet-N 100 (acetaminophen and propoxyphene)  Acetaminophen is a less potent pain reliever and a fever reducer that increases the effects of propoxyphene. The combination of acetaminophen and propoxyphene is used to relieve mild to moderate pain with or without fever.

[3] Darvocet (Acetaminophen and propoxyphene) was withdrawn from the U.S. market in November 2010. See www.drugs.com/mtm/darvocet

medication to help her sleep and Dr. McQueen prescribed Restoril[4] 15 mg.

It does not appear that the ALJ discussed the Plaintiff's medications other than to note that she felt the Plaintiff had "some improvement" with the prescription of Prozac. (T. 69)

2.  RFC evaluation

There does not appear to be any RFC assessment in the record and the ALJ stated that she formed her RFC assessment in the "absence of supporting medical opinion evidence". (Tr. 69).

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  The ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700 at 704 (8th Cir.2001). " 'An administrative law judge may not draw upon his own inferences from medical reports.' " *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir.2000) (quoting *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975)). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003)

The plaintiff has the burden of producing documents to support his or her claimed RFC. *See Cox*, 160 F.3d at 1206; 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this instance the Plaintiff attempted to obtain a medical source statement from her treating physicians without success. (ECF No. 8-1).  The ALJ has a duty to fully and fairly develop the record.  *See Frankl v.*

---

[4] Restoril is used to treat insomnia symptoms and belongs to a group of drugs called benzodiazepines (ben-zoe-dye-AZE -eh-peens). It affects chemicals in the brain that may become unbalanced and cause sleep problems (insomnia). See www.drugs.com  Viewed April 27, 2012.

*Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). 245 F.3d 700, 704 (8th Cir. 2001).

Also, in this particular case one of the Plaintiff's treating physicians diagnosed the Plaintiff with fibromyalgia which the ALJ discounted. The court believes that remand is necessary to allow the ALJ addressed interrogatories to the treating physician to see if she had properly utilized tender points in her diagnosis and to secure an RFC from a medical source.

### V.    Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated this 14th day of June 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE